```
                   UNITED STATES DISTRICT COURT
                     DISTRICT OF CONNECTICUT
```

ESTATE OF GUGSA ABRAHAM       :
DABELA, et al,                :
                              :
    Plaintiffs,               :
                              :
    v.                        :     CASE NO.  3:16cv534(RNC)
                              :
TOWN OF REDDING, et al.,      :
                              :
    Defendants.               :

## RULING ON MOTION FOR PROTECTIVE ORDER

The plaintiffs, the Estate of Gugsa Abraham Dabela and Abraham Dabela, the personal representative of the Estate, bring this § 1983 action against the Town of Redding, the Chief of Police Douglas Fuchs, certain Redding police officers (collectively "the Redding defendants") and "Killer John Doe." The plaintiffs allege that the Redding defendants "failed to conduct a proper investigation regarding the manner of death" of Gugsa Abraham Dabela ("Dabela") and "concluded the case [w]as a suicide because Dabela was an African-American."[1] (Compl. ¶97.) During the course of discovery, the plaintiffs deposed State's Attorney Stephen Sedensky ("Sedensky"), who is not a defendant, regarding his determination that the evidence did not support a conclusion that Dabela's death was a homicide. Sedensky declined to answer certain questions, asserting the attorney work-product and the deliberative process/mental process privileges. Pending before the court is

---

[1] The plaintiffs believe that Dabela's death was the result of a homicide.

Sedensky's motion for protective order.  (Doc. #56.)  He requests that the court (1) sustain his objections and (2) preclude the plaintiffs from disclosing the deposition transcript and/or video recording of the deposition and from making public comment concerning this case while this case is open.  (Doc. #56 at 1.) The motion for protective order is granted in part and denied in part.

I.  Deposition Questions

Sedensky argues that the "objectionable questions are focused on discovering [his] methodology and substance of his analysis of the evidence, the content of his discussions with investigators concerning the case, and his judgment as to the credibility of certain witnesses."  (Doc. #57 at 19.)

A.  Deliberative Process/Mental Process Privilege[2]

The deliberative process privilege protects communications that are part of the decision-making process of a governmental agency. See Nat'l Council of La Raza v. Dep't of Justice, 411 F.3d 350, 356 (2d Cir. 2005) ("[T]he deliberative process privilege [is] a sub-species of work-product privilege that covers documents reflecting advisory opinions,[3] recommendations and deliberations

---

[2]Because plaintiffs have asserted federal constitutional claims in this action, Sedensky's privilege claims are governed by federal common law.  Nat'l Cong. for Puerto Rican Rights ex rel. Perez v. City of New York, 194 F.R.D. 88, 92 (S.D.N.Y. 2000).

[3]"The deliberative process privilege applies to depositions of government employees as well as discovery requests for documents."

2

comprising part of a process by which governmental decisions and policies are formulated."). It "has been applied to protect not only decisions made by federal government agencies, but also decisions by prosecutors." Starkey v. Birritteri, No. CIV.A. 12-10988, 2013 WL 3984599, at *2 (D. Mass. Aug. 2, 2013). To qualify under the deliberative process privilege, the document or testimony must be "(1) predecisional - that is, prepared in order to assist an agency decisionmaker in arriving at a decision," and (2) deliberative - that is, actually related to the process by which policies are formulated. Unidad Latina En Accion v. U.S. Dep't of Homeland Sec., 253 F.R.D. 44, 47 (D. Conn. 2008). "[F]actual material not reflecting the agency's deliberative process is not protected." Local 3, International Brotherhood of Electrical Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988).

"Courts sometimes distinguish between the deliberative process and mental processes privileges in that the former applies to material reflecting the pre-decisional, mental, and deliberative process, and the latter to the decision-maker's actual thought process. . . . However, each privilege complements the other, and in combination they operate to preserve the integrity of the deliberative process itself." In re World Trade Ctr. Disaster Site Litig., No. 05 CIV. 9141, 2009 WL 4722250, at *2 n.1 (S.D.N.Y. Dec.

---

Anilao v. Spota, No. CV 10-32, 2015 WL 5793667, at *18 (E.D.N.Y. Sept. 30, 2015).

3

9, 2009); Dowling v. Arpaio, No. CV-09-1401-PHX-JAT, 2011 WL 1456732, at *3 (D. Ariz. Apr. 15, 2011) ("[T]he two concepts are viewed in conjunction with one another — a party seeks the mental impressions of a person as contained in that person's deliberative process.")

The privilege is a qualified one: If the privilege is found to apply, the court uses a "balancing approach that considers the competing interests of the party seeking disclosure and of the government — specifically, its need to engage in policy deliberations without the omnipresent threat of disclosure." Winfield v. City of New York, No. 15CV05236, 2018 WL 716013, at *5 (S.D.N.Y. Feb. 1, 2018). "In assessing whether and to what extent the privilege bars disclosure, courts 'must balance the extent to which production of the information sought would chill the [government's] deliberations concerning such important matters . . . against any other factors favoring disclosure.'" Id. at *6. Courts weigh (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. Id.

    B.    Common Law Work Product Doctrine under Hickman v. Taylor

The work product privilege "provides qualified protection for

4

materials prepared by or at the behest of counsel in anticipation of litigation or for trial." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007); see also United States v. Adlman, 134 F.3d 1194, 1196-97 (2d Cir. 1998) (work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries") (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)). The work product doctrine under Hickman extends to nonparties and depositions. See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig., No. 05-MD-1720, 2018 WL 1162552, at *11 (E.D.N.Y. Feb. 26, 2018)("Work product that is not in a tangible form is protected under Hickman v. Taylor, 329 U.S. 495 (1947)"); Tankleff v. Cty. of Suffolk, No. 09-CV-1207, 2011 WL 5884218, at *1-2 (E.D.N.Y. Nov. 22, 2011)("The common law work product doctrine . . . extends to nonparties").

"A party seeking discovery of attorney work-product must show 'substantial need,' for fact work-product." In re Grand Jury Proceedings, 219 F.3d 175, 190 (2d Cir. 2000). As for work-product that shows mental impressions, conclusions, opinions, or legal theories of an attorney, "at a minimum such material is to be protected unless a highly persuasive showing [of need] is made." Id. at 190-91 (quoting Adlman, 134 F.3d at 1204).

C. <u>Discussion</u>

After careful review of the deposition transcript, following the principles enunciated above, the court rules as follows:

1. The motion for protective order is granted and the objections sustained as to the following questions because the answers would reveal the deliberations, analysis, opinions, recommendations, debate, and/or advice regarding Sedensky's prosecutorial decision: dep. at 15, lines 3-5; dep. at 16, lines 8-10; dep. at 17, line 14; dep. at 22, lines 10-12; dep. at 23, lines 2-4; dep. at 25, lines 18-19; dep. at 30, lines 17-21; dep. at 57, lines 13-17; dep. at 60, lines 12-15; dep. at 66, lines 19-22; dep. at 78, line 25 to dep. at 79, lines 1-3; dep. at 89, lines 18-19; dep. at 102, lines 5-6; dep. at 103, lines 2-3; dep. at 119, lines 8-11; dep. at 168, line 18 and lines 23-25; dep. at 175, lines 9-11; dep. at 176, lines 23-25; dep. at 177, lines 14-16; dep. at 192, lines 17-19; dep. at 235, lines 6-7; dep. at 236, lines 20-22; dep. at 238, lines 2-6 and lines 23-25 and dep. at 240, lines 3-5.

The plaintiffs contend that even if the deliberative process privilege applies, the court should allow discovery because "all of the factors" of the balancing test "favor disclosure." (Doc. #59 at 11.)

The court must "balance the public interest in nondisclosure against the need of the particular litigant for access to the information." <u>In re World Trade Ctr. Disaster Site Litig.</u>, No. 05

CIV. 9141(AKH), 2009 WL 4722250, at *5 (S.D.N.Y. Dec. 9, 2009). In this case, while the issues presented are undeniably serious and the evidence is arguably relevant, Sedensky is merely a witness and the plaintiffs have had access to all the underlying evidence, including witness interviews, forensic analyses, and the reconstruction report. More to the point, inquiry into the exercise of prosecutorial discretion would have a significant negative impact on the State's Attorney. It is in the public's interest to encourage - not discourage - unreserved discussion and frank analysis in prosecutorial decisionmaking. As Sedensky points out, there are "systemic liabilities" of "publicly second-guessing the decision of a prosecutor to forego a criminal prosecution." (Doc. #60 at 6.) On balance, the governmental interest in nondisclosure outweighs the plaintiffs' interest in disclosure.

2. The motion is denied as moot as to the questions at dep. at 57, lines 24-25 to dep. at 58, lines 1-4 and dep. at 58, lines 17-21 because the witness subsequently answered the same or essentially the same query at dep. 59 at lines 14-22. The motion also is moot as to the question at dep. at 83, lines 8-10 (answered at dep. at 83 at line 12) and the question at dep. at 120, lines 15-23 (answered at dep. at 121, lines 14-15.)

II. Disclosure

Sedensky next moves for a protective order precluding the plaintiffs from publicly disclosing the transcript and/or the video

recording of his deposition and from making "public comment" about this case. He argues that a protective order is appropriate because the plaintiffs have "demonstrated [their] propensity to rely on the 'exploitative media' in [their] attempt to foster a 'circus-like atmosphere' surrounding the issues raised in the current litigation." (Doc. #57 at 23.)

"[T]he court may issue a protective order only after the moving party demonstrates that good cause exists for the protection of the material." Am. News & Info. Servs., Inc. v. Rovella, No. 3:15cv1209(RNC)(DFM), 2017 WL 3736700, at *2 (D. Conn. Aug. 30, 2017)(internal quotation mark and citation omitted). "Good cause is established by demonstrating a clearly defined and serious injury resulting from disclosure. . . . Broad allegations of harm will not establish good cause, rather to establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Hansen v. U.S. Airports Air Cargo, LLC, No. 3:07cv353(JCH)(HBF), 2008 WL 4426909, at *1 (D. Conn. Sept. 26, 2008). The court has "broad discretion" to "decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "The mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [a witness's] deposition testimony is not in and of itself sufficient to

establish good cause to support the issuance of [a] protective order." Flaherty v. Seroussi, 209 F.R.D. 295, 299 (N.D.N.Y. 2001). See DaCosta v. City of Danbury, 298 F.R.D. 37, 40 (D. Conn. 2014)("Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of 'substantial embarrassment' or harm.")(citation omitted.)

"Generally speaking, dissemination of pretrial discovery materials . . . is not prohibited absent a protective order." Am. News & Info. Servs., 2017 WL 3736700, at *2. "Nonetheless, dissemination for non-judicial purposes is unusual and rightly so. The discovery rules are 'a matter of legislative grace.'" DaCosta, 298 F.R.D. at 39 (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32 (1984)). "They compel parties to divulge information 'for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes.'" Id. (quoting Seattle Times Co., 467 U.S. at 34). The liberality of this process creates "a significant potential for abuse" such as delay, expense, misuse of court process, and damage to the reputation and privacy of litigants and third parties. Id. at 34-35. Courts therefore must be mindful that the purpose of discovery is "to facilitate orderly preparation for trial, not to educate or titillate the public." Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982).

The court does not countenance the public dissemination of

9

discovery materials. However, on the record before the court, Sedensky makes only vague and general allegations of harm and has not shouldered his burden of demonstrating good cause, that is, a clearly defined and serious injury, to warrant a protective order.

Sedensky also seeks a protective order precluding the plaintiffs from making public comment concerning this case. In support, Sedensky cites Local Criminal Rule 57(e), which governs statements by counsel in a criminal case. He argues that Local Civil Rule 83.2 provides that Local Criminal Rule 57 applies to civil litigation. As the plaintiffs point out, this is an incorrect reading of the rule. Local Criminal Rule 57(e) does not apply to civil cases. The request for a protective order is denied.

III. Conclusion

For these reasons, the motion for protective order (doc. #56) is granted in part and denied in part.

SO ORDERED at Hartford, Connecticut this 23rd day of March, 2018.

              /s/               
              Donna F. Martinez
              United States Magistrate Judge