## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ESTATE OF GUGSA ABRAHAM DABELA, et al., | : : : | Case No.:  3:16-cv-00534-RNC |
| Plaintiffs, | : : | |
| v. | : : | |
| TOWN OF REDDING, et al., | : : | |
| Defendants. | : | |

### *CORRECTED*

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

Pursuant to this Court's Order, ECF # 149, Plaintiffs file this supplemental memorandum in support of their Emergency Motion to Show Cause as to non-party first responders Preston Boyd and Gregory Zap, to show cause why they have failed to comply with the December 18, 2018 Order (ECF # 98), requiring that they produce buccal swab DNA samples in conjunction with this case.

The weight of the evidence is Gugsa Dabela did not commit suicide.[1]  If Gugsa did not commit suicide, then his death was a homicide.[2]  In his expert report, ECF # 121-3, Salvatore Rastrelli explains his synthesis of the information in reach the above conclusions. Of particular interest is that none of Gugsa's DNA was found on the trigger of the gun.[3]  If Gugsa's DNA is not on the trigger and there is insufficient evidence to conclude he fired a gun the night of his death, then one must question the source of the DNA on the trigger.

---

[1] See ECF # 121-3, Page 13 of 18.
[2] *Id.*
[3] See ECF # 121-5, Page 5 of 18.

As described in this memorandum, viewed within the context of Plaintiffs' position that Defendants are engaged in an on-going cover-up of the death of Gugsa Dabela, the existence of DNA on the trigger and slide pull of Gugsa Dabela's gun that conclusively did not match to Gugsa Dabela, combined with two first-responders failing on three (3) separate occasions to provide DNA to investigate this conundrum, demonstrates the probative value of this Court requiring those the two first responders at issue, Boyd and Zap, to comply with the Court's Order to participate in the investigation of the death of Gugsa Dabela.

**ARGUMENT**

1. **DNA on The Trigger of the Gun Allegedly Used to Kill Is Probative Evidence of the Manner of Death.**

Throughout this case, Plaintiffs have maintained that the individual Defendants, the Redding Police Department, and other law enforcement personnel at various levels engaged in a cover-up to prevent the discovery of the true cause of the death of Gugsa Dabela. (ECF # 121, p. 2, 17, 22). Plaintiffs presented evidence that would permit a reasonable jury to find that Gugsa's death was the result of a homicide, not a suicide, and that the police engaged in a cover up of that homicide. (*Id.* at p. 17). Three sets of DNA, none belonging to Gugsa, were found on the trigger. (*Id.* at p. 16). A sufficient combination of DNA alleles to identify the specific individual that last fired Gugsa's gun was collected from the trigger and the slide pull of his firearm. The two individuals subject to this motion were two of the firefighters from the Georgetown Fire Department who responded to the scene where Gugsa was allegedly found dead by the Defendants. (ECF # 85, p. 7 n.1, ECF # 85-8).[4] Boyd and Zap failed to provide a DNA swab in 2015 during the Redding police department's collection of DNA (*Id.*), and these same two individuals were

---

[4] The Georgetown Fire Department is a public department staffed by volunteers that responds to medical and fire emergencies in Redding, Weston, and Wilson, CT. *See* https://www.gtownfire.org/.

again the only two individuals who refused to provide a swab on either of the two separate occasions in which Plaintiffs have arranged to collect the data per this Court's Order. (ECF # 98). Prior to his death, Gugsa wrote a Facebook message stating that he was receiving dirty looks from male firefighters at a local bar because of attention Gugsa was receiving from a woman referred to as "Becca." (ECF # 85-6). Whether two first-responding firefighters' DNA matches the DNA found on the trigger of the gun Gugsa Dabela allegedly pulled to end his own life is probative of the cover-up and homicide alleged by Plaintiffs, to either exclude these two men as potential killers or, if there is a match, to potentially finally identify who killed Gugsa.

The record demonstrates that only two of the nearly one-dozen first-responders to the scene have repeatedly refused to provide a DNA sample that would affirmatively demonstrate whether or not the DNA found on Gugsa's gun belonged to any individuals associated, directly or indirectly, with the Redding Police Department. If the DNA demonstrates an affirmative connection between the first responders and the DNA on the trigger of the gun that was allegedly used to end the life of Gugsa Dabela, the evidence proffered by Plaintiffs in their summary judgment briefing demonstrating a cover-up as to the manner of Gugsa's death is thoroughly strengthened. The DNA found on the trigger did not belong to Gugsa and the bullet allegedly collected from the scene during the investigation both could not be matched to the gun Gugsa allegedly used to take his life, and did not contain any trace blood, DNA or brain tissue and therefore could not be linked to Gugsa's death. (*Id*. at p. 16). Further, Plaintiffs provided evidence that the police, and not a medical examiner, determined that the manner of death was a suicide, at the scene, in the middle of the night, prior to any medical examination and without following proper protocol for investigating potential homicides. (*Id*. at p. 16-18).

DNA discovered on the trigger of the gun used to kill someone is relevant and probative evidence of the manner of death. In a murder trial, this evidence would be used to establish guilt. Likewise, it is strong evidentiary support that the contributor of the DNA, at the very least, touched the trigger. It is probative of whether the manner of Gugsa's death was a homicide or a suicide. Such a finding would be very strong evidence of who the killer is, shedding light on the cover-up engaged in by the individual Defendants, the Redding Police Department, and other law enforcement agencies and personnel at various levels. The only remaining DNA to be gathered for testing pursuant to the Court's Order is that of two firefighters who responded to the scene.

## 2. There Is Evidence that Connects The Relevant Firefighters and First Responders to a Cover Up.

In addition to Gugsa's Facebook message about the firefighter intimidation (ECF # 85-6), there is evidence that the 911 caller was also a firefighter <u>and</u> that he lied about his actions at the scene. The 911 caller, David Vecchia, is associated with the West Redding Volunteer Fire Department.[5] (ECF # 121-17, p. 54; Exhibit 1, Facebook Post by West Redding Police Department re: Dave Vecchia). David Vecchia stated that he saw a car upside down on the side of the road while he was driving home. He called in to report it but told the police he did not stop to offer help or investigate. (ECF # 121-17, p. 54; Exhibit 2, 911 Call). Vecchia's residence is located approximately three miles from the accident. (*Id.*; Exhibit 3, Google Maps of Vecchia's Address to Scene of Crime). Conversely, another witness ("Witness G"), who had been contacted as part of the Plaintiffs' investigative efforts, wrote in a text message that he knew where the mysterious "foot marks" near Gugsa's overturned car came from: the neighbor who called the cops and investigated the scene. (Exhibit 4, Text Message Exchange with Witness G, p. 6). There is no

---

[5] Redding Fire Department lists both Georgetown and West Redding Volunteer Department on its website. When operating from the Redding Fire Department website, the links for Georgetown and West Redding are the same. https://reddingfire1.org/

evidence nor disclosures that there was a second 911 caller on this evening. This evidence is thus probative and relevant to the cover-up engaged in by Defendants as to the true cause of Gugsa's death. A reasonable reading of the evidence permits a finding that the 911 caller was a volunteer firefighter. There is no evidence that anyone other than Vecchia reported the accident. The text messages indicate that the 911 caller was a neighbor.  Vecchia was a neighbor who lived nearby. Vecchia claimed he did not stop or investigate the accident at all, but Witness G states that the 911 caller is the individual who left the "foot marks" at the scene when he went to check it out. The investigation did discover a muddy footprint at the scene, somehow on the back of Gugsa Dabela's jacket. (ECF # 121-16, p. 40). Thus, Vecchia could not have both not stopped nor investigated, and also have left footprints at the scene. This strengthens the need to require DNA testing of the remaining two firefighters also at the scene.

Here, the absence of Gugsa's DNA on the trigger is highly probative that his death was not a suicide. The presence of three unknown individuals' DNA on the trigger is probative that the last person to pull the trigger was not Gugsa, but one of these other three individuals. A combination of DNA alleles sufficient to identify the specific individual that last fired Gugsa's gun was collected from the trigger and the slide pull of his firearm.  Two, and only two, of the first responders have refused to provide DNA samples during Redding's own investigation. These same two individuals continue to refuse to provide the DNA samples provided for by this Court's Order, and refused either attempt by Plaintiffs to have the DNA collected at the Georgetown Fire Department for their convenience, and have now indefinitely refused to provide a buccal swab because of Covid-19. Further, the evidence of Vecchia's presence at the scene suggests the existence of a third individual at the scene whose DNA was never tested. Whether the DNA of the firefighters matches the DNA found on the trigger of the gun Gugsa Dabela allegedly pulled to

end his own life is probative of the cover-up and homicide as more thoroughly discussed in ECF # 121, Plaintiffs' Opposition to Defendants Motion for Summary Judgment.

Given this, Plaintiffs' argument for the probative value of this testing should be examined in the following context: why are these two, and <u>only</u> these two, non-party volunteer firefighters / first responders, categorically refusing to submit to DNA analysis regarding the death of Gugsa Dabela. When first requested for DNA, they were allegedly not present, and their DNA was not taken. (ECF # 85-8). At no other point did Captain O'Donnell follow up and complete his investigation with the first responders to take their DNA. (*Id*.; ECF # 85-2).[6]  Long after this failure, and only as a result of Dr. Dabela's personally prepared FOIA request and <u>not</u> from the documents produced by Defendants in their discovery responses, was this and other information related to the initial *partial* DNA collection *finally* discovered by Plaintiffs. (ECF # 85, p. 2-4). After a failed motion to quash Plaintiffs' subpoena for this DNA, Zap and Boyd still refuse to cooperate.

No one has articulated to this court a valid reason to disobey a court order.  However, there is clearly some unarticulated reason why the two subjects refuse to comply with the court order. If there are concerns that their DNA might implicate them in other crimes, the Plaintiff is willing to stipulate to an in-camera review of the results of the DNA comparison of the two subjects to the known DNA found on the trigger and the trigger pull.  If they are excluded perhaps the Court can assure them that their DNA will be destroyed and not made public and not made part of any maintained database.

---

[6] It is worth noting that Captain O'Donnell was at the scene and concluded then that Gugsa' death was self-inflicted and that the incident was not considered a crime. (ECF # 121, p. 34, PSMF ¶ 14).   This determination was made before sunrise, before any ballistic analysis had been conducted, before Gugsa's autopsy, and without any witnesses to the incident.  (ECF # 21-3, Page 12 of 18).

Every other individual involved at the scene of Gugsa's death has provided DNA, except these two individuals, and David Vecchia.  This, combined with the questions of fact surrounding the actions of the 911 caller and evidence of a contemptuous relationship between Gugsa and unidentified individual firefighters, is probative of the cover-up engaged in by Defendants. In addition, the court must find that it is extraordinary for these two individuals to not only refuse a request to submit DNA, but for them to defy and remain in contempt of a clear and unambiguous court order.  Here, there is more than just a nexus between the two in question and the scene of the death of Gugsa, which would be enough to support the request, but motive is paramount in any criminal investigation, and the contemptuous relationship between Gugsa and the unidentified individuals brings into question of motive.  Then the question turns to whether there was opportunity, and based on their nexus to the scene there was clearly opportunity.  Thus, the court should hold these subjects in contempt of its order and compel them to comply, especially in light of the fact that this is possibly a murder, as opposed to in comparison a lower level crime, such as a crime against property.

Given that Defendants and those involved continue to adamantly defend the determination that Gugsa's death was self-inflicted, in the face of clear and contrary evidence as discussed in Plaintiffs' opposition to summary judgment, it is imperative that these two individuals who have continued to dodge a simple buccal swab be compelled to provide this evidence prior to this Court's determination on summary judgment.  If the test provides a match between the DNA found on the trigger and the DNA belonging to Zap and/or Boyd, they should be required to sit for a deposition or provide an affidavit describing their presence at the scene and why their DNA, and not Gugsa's, was on the trigger of the gun found at the scene the night of Gugsa's untimely death.

**CONCLUSION**

The heart of Plaintiffs' argument is that Defendants engaged in a cover up and intentionally refused to investigate clear evidence that Gugsa was murdered. Defendants knew three sets of DNA were found on the trigger, knew none belonged to Gugsa, but still declared his death a suicide without any actual investigation that Gugsa's death was not self-inflicted. Throughout the entire investigation and subsequent civil case, two first responders have refused to provide a DNA sample to rule out whether the DNA found on the trigger belonged to an individual at the scene. Further, the evidence demonstrates that the 911 caller left a footprint at the scene, despite claiming he was never there. The DNA testing is probative of Plaintiffs' theory that Defendants intentionally engaged in a cover-up to prevent the detection of the true nature of Gugsa's death. For these reasons, Plaintiffs respectfully request this Honorable Court required Zap and Boyd and submit to DNA testing prior to this Court's determination on Defendants' motion for summary judgment.

Respectfully Submitted,

Excolo Law, PLLC

Dated: June 8, 2020      By:    */s/ Solomon M. Radner*
Solomon M. Radner (*phv08140*)
Keith Altman (*phv08843*)
26700 Lahser Road, Ste 401
Southfield, MI 48033
sradner@excololaw.com
kaltman@excololaw.com
(866) 939-2656

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2020, a copy of foregoing Plaintiffs' Supplemental Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Solomon M. Radner</u>
Solomon M. Radner (*phv08140*)
