# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - -

ESTATE OF GUGSA ABRAHAM DABELA, ET AL No.: 3:16-cv-534-RNC

Plaintiffs

v.

TOWN OF REDDING, ET AL,

Defendants

Hartford, Connecticut
OCTOBER 15, 2024

- - - - - - - - - - - - - - - -

TELEPHONIC CONFERENCE RE:
MOTION FOR SUMMARY JUDGMENT AND STATUS

B E F O R E:

THE HONORABLE ROBERT N. CHATIGNY, SENIOR U.S.D.J.

A P P E A R A N C E S:

FOR THE PLAINTIFFS:
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road
Suite 375
Farmington Hills, MI 48334
BY: KEITH ALTMAN, ESQUIRE
SOLOMON M. RADNER, ESQUIRE

FOR THE DEFENDANTS:
HOWD & LUDORF, LLC
100 Great Meadow Road
Suite 201
Wethersfield, CT 06109
BY: THOMAS R. GERARDE, ESQUIRE
ADAM DiFULVIO, ESQUIRE

Alicia A. Cayode Kyles, RMR
Official Court Reporter

(Telephonic conference started at 10:04 a.m.)

THE COURT: Good morning. This is Judge Chatigny speaking.

UNIDENTIFIED SPEAKER: Good morning, Judge.

THE COURT: This is a -- good morning. This is a telephone conference in the Dabela case.

Would counsel please enter their appearances.

MR. ALTMAN: Good morning, Your Honor. Keith Altman on behalf of the plaintiff. Also here is Solomon Radner. And then, Your Honor, I am severely visually disabled so I have Lori Crusselle on the line as well, one of my paralegals, just in case we need to look up anything.

THE COURT: Okay. Thank you.

MR. GERARDE: And good morning, Your Honor. Tom Gerarde representing defendants who filed the motion and I have Attorney Adam DiFulvio also on.

THE COURT: Thank you.

I am glad to have this opportunity to speak with you. I've spent a lot of time on the case and for reasons I will explain in a moment I've concluded that the motion for summary judgment on the present record must be granted.

Ordinarily, I would simply issue a written ruling but I wanted to speak with you before doing so for a

number of reasons. Based on what I tell you today, you may want to have a follow-up conference with me or you may prefer that I go ahead and issue a written ruling.

Before discussing the legal issues that are presented by the case, I first want to apologize to you and to each of your clients for the long delay in providing you with a decision. I'm sincerely sorry that it has taken me this long to get back to you.

On a certain level, the case is exceptionally difficult for many reasons. Fundamentally, the case arises from the tragic death of Mr. Dabela, a 35-year-old lawyer of African American heritage in highly unusual circumstances. His body was found in an overturned vehicle following a violent crash yet, the cause of death was found to be a gunshot wound to the head.

Dr. Dabela, acting on behalf of his son's estate, alleges that the police defendants decided to treat his son's death as a suicide and intentionally failed to investigate the case as a possible homicide at least partly because of his race.

The complaint alleges that the Dabela family has spent hundreds of thousands of dollars on lawyers and experts in an effort to get at the truth of what happened.

The complaint alleges that the death was, in fact, a homicide committed either before or after the

crash.

In opposition to summary judgment the Estate has submitted expert reports showing that the investigation was at best substandard and, in the family's view, the forensic evidence provides reason to believe that in fact the shooter was a police officer or someone else known to the defendants.

So, on a human level the case is exceptionally difficult and, again, I want to apologize for failing to give you a timely decision.

Turning to the legal issues, I want to begin by making sure there is no misunderstanding regarding the claims that remain in dispute.

The complaint contains a total of 10 counts, some of which encompass more than one claim. Of the 10 counts, five remain open as follows:

Count II alleging denial of equal protection based on the defendants' failure to investigate the death as a homicide.

Count IV alleging denial of access to courts based on the failure to investigate.

Count VI alleging a municipal liability claim under *Monell* based on the failure to investigate.

Count VII alleging a Section 1985 conspiracy to interfere with civil rights relating to the investigation.

And Count IX alleging a wrongful death claim against the person referred to as Killer John Doe.

Two other counts have been withdrawn in their entirety, specifically Count I, alleging denial of due process based on delay in processing Mr. Dabela's permit application and Count III alleging a violation of the Second Amendment based on the permit processing delay.

In addition, in response to the motion for summary judgment the plaintiffs have conceded that judgment may be granted on the following three counts:

Count V, alleging a due process claim based on a state created danger theory.

Count VIII, alleging a defamation claim.

And Count X, alleging a claim for intentional infliction of emotional distress.

Looking at the five claims that remain open, all five are based on the police defendants failure to investigate the death as a homicide.

Count II alleging a violation of equal protection and Count IV alleging a denial of access to courts provide the predicate for the other claims. In other words, if the equal protection and access to court claims fail at this stage, as a matter of law, so do the other claims. Pragmatically then, the outcome of the motion for summary judgment depends on the claims in Counts II and IV.

If you think I am mistaken about any of this, I want you to let me know, because I want to be sure to address any claims that you think are still in contention.

Turning to my next topic for today, the plaintiffs' Local Rule 56 statement neither admits nor disputes many of the defendants' assertions of fact and instead argues that the assertions are irrelevant. The defendants reply argues that the facts are relevant.

To my mind, the rules governing summary judgment do not permit a plaintiff to respond to a defendants' assertion of fact simply by stating that the asserted fact is irrelevant. Rather, the rules require the plaintiff to either admit the asserted fact or show that it is genuinely disputed.

Under the rules, when a party's assertion of fact is not properly addressed by the opposing party, The Court can give counsel an opportunity to properly address the asserted fact or consider the fact undisputed.

In this case, the asserted facts might well be irrelevant but I want to -- I don't want to treat them as undisputed without giving plaintiffs' counsel notice and an opportunity to be heard especially because many of these asserted facts are sensitive in nature.

Turning to the merits of the claims that remain in dispute, the Estate argues that police defendants

intentional failure to investigate violated the equal protection clause as alleged in Count II because it was motivated, at least in part, by racial animus and the Estate argues that the failure to investigate also violated the right of access to court as alleged in Count IV, because a proper investigation would have enabled the Estate to bring a wrongful death claim against the responsible party referred to in the complaint and briefing as Killer John Doe.

Taking each claim in turn, the parties dispute whether the evidence raises a genuine issue of differential treatment to the violation of equal protection clause. However, this claim is brought on behalf of Mr. Dabela and his right to an unbiased investigation did not survive his death. This is the law in the Second Circuit which I am bound to follow.

For this reason, I believe summary judgment must be granted on the equal protection claim in Count II.

Turning to the denial of access to court's claim in Count IV, this is a backward-looking claim similar in nature to a claim addressed by the Second Circuit in a case called *Oliva*, O-L-I-V-A, the *Town of Greece*, G-R-E-E-C-E, at 630 Federal Appendix 43. This case appears to be the Second Circuit's most recent case addressing a claim of this nature.

In *Oliva* the plaintiff's daughter died as a result of a two-car accident that occurred in an area undergoing road reconstruction. The plaintiffs accepted a settlement from the driver of the car in which she was a passenger and filed suit against the driver of the other car. The decedent's estate alleged that the defendant's reckless or intentional failure to properly investigate the fatal accident deprived it of an opportunity to recover additional damages.

Of particular relevance to the access to court claim in Count IV here, the Estate alleged that the defendant's failure to investigate prevented it from obtaining damages from unidentified third parties whose actions may have contributed to the fatal accident, such as persons associated with entities working on the road reconstruction project.

The District Court dismissed the access to court claim relying on the Second Circuit's decision in a case called *Sousa*, S-O-U-S-A, v. *Marquez*, M-A-R-Q-U-E-Z, reported at 702 F.3d 124 (2d Cir. 2012).

On appeal, the Second Circuit assumed, without deciding, that backward-looking access to court claims can state the claim upon which relief may be granted in this circuit. However, it affirmed the dismissal because the estate failed to allege facts supporting a finding that

but for an act or omission of the defendants, it would have been able to bring a plausible claim against a third party. To sustain its burden, the estate had to point to a claim that could have been brought in court as a result of the fatal accident, a claim the court referred to as the predicate claim or underlying claim, and show that the claim could have resulted in an award of damages.

Affirming the dismissal, the court stated, quote, The plaintiff's conclusory allegation that the defendant's conduct has prevented them from obtaining damages from other parties whose actions may have contributed to the collision is not supported by sufficient alleged facts to meet the pleading requirements for an underlying claim articulated by the Supreme Court in *Christopher* v. *Harbury*, H-A-R-B-U-R-Y, 536 U.S. 403 414 (2002).

Of note, the Second Circuit's opinion echos the Supreme Court's admonition in *Harbury* concerning, quote, The need for care in requiring the predicate claim to be described well enough to apply the nonfrivolous test and to show that the arguable nature of the underlying claim is more than hope, end quote.

Following the approach taken in *Oliva*, the issue raised by the motion for summary judgment on Count IV is whether the record, viewed fully and most favorably to the Estate, supports a reasonable finding that its inability

to bring a claim against the unidentified person referred to as Killer John Doe is attributable to a wrongful act or omission of one or more of the police defendants.

Specifically, assuming for purposes of the motion for summary judgment that the death was a homicide, does the evidence support a reasonable finding that but for certain acts or omissions of one or more of the defendants, the investigation would have revealed the identity of the shooter and produce sufficient evidence to support a viable wrongful death action against them?

Based on the submissions in the record, I think the evidence is not sufficient. At a minimum, such a finding would require sufficient proof of the killer's identity.

The Estate urges that it is possible that Mr. Dabela was murdered by Sergeant DeLuca and a cover-up has been perpetrated by the police defendants to protect him against being held accountable for the murder. The Estate points to his alleged admission to family members that he owned the same type of gun found in the car, which he denies.

Assuming for present purposes that he did make this admission, and giving the Estate the benefit of all reasonable inferences that can be drawn from his admission viewed in light of the record as a whole, I do not think a

jury could reasonably find that Mr. Dabela more likely than not was murdered by Sergeant DeLuca.

In fact, the Estate argues that Mr. Dabela could have been shot by someone else known to the police or by yet another individual. Given this uncertainty about the identity of the killer, even if we assume the death was a homicide, I think the Estate's access to court claim is unavailing. To hold otherwise would mean that whenever a homicide is not properly investigated an access to court claim will be available against the police on the ground that their failure to properly investigate has prevented the decedent's estate from suing the perpetrator.

With all of this in mind, it seems to me that at this point I should give you an opportunity to consider what I have said and get back to me on the following:

First, have I properly understood the state of the record with regard to the claims that remain open, or have I missed something? In which case, I would ask you to please tell me what I have missed.

Second, with regard to the Rule 56 statements, do you want me to assume that these asserted facts are undisputed for purposes of summary judgment or would you request that I proceed in some other way?

Those asserted facts are not pertinent to Count II. As I have explained, Mr. Dabela's right to an

unbiased investigation did not survive his death. Whether those asserted facts have any bearing on Count IV, presents what could be a closer question, but as I've said, given the sensitive nature of these facts I didn't want to simply accept them as undisputed because of a procedural problem.

Third, I would ask you to focus very specifically on the analysis of the denial of access to court claim, consistent with what I have said today and let me know whether you think the evidence actually does raise a triable issue.

It's possible that there are other points that counsel would want to bring to my attention, but those are the ones that are of particular interest to me at this time.

As far as scheduling goes and how you would wish to get back to me, I would leave that to you to discuss among yourselves. If you think that the best course is to have supplemental submissions addressed to these three items, that's fine with me and I would defer to you on the timing of those submissions.

Alternatively, if you would rather set up another telephone conference which would be preceded by a conference among counsel so there would be no surprises on the call with me, that would be fine with me, but I will

leave it to you to confer and let me know how you want to proceed which you can do by contacting chambers.

That covers what I have for you today.

Is there anything that either side wants to raise with me now?

And let me start with plaintiffs' counsel.

MR. ALTMAN: Good morning, Your Honor. Thank you. This is Keith Altman.

A couple of things, brother counsel and I work extremely well together so I suspect we'd be able to discuss what you've asked for and come to a joint agreement and so I don't anticipate that being a problem based on our past work.

There is one issue, Your Honor, outstanding which kind of affects everything, which is when I took Mr. Sedensky's deposition, Mr. Sedensky refused to answer numerous questions which I think were extremely germane and relevant to the case and we had filed a motion with respect to his refusal to answer those questions. The magistrate at the time ruled upon it and which we filed an objection I believe, and it may have gotten lost in the wash, but there is a significant discovery issue and I can research, Your Honor, and get you the ECF numbers that are relevant to that, so that's the only thing that I'll say.

And the only other thing I'll bring up to The

Court, Your Honor, that given the duration and I've lost my vision since the motions were filed, which is probably going to need a little bit longer on my end than you might have expected. Once again, I don't anticipate that being a problem working that out with brother counsel, but I just wanted to let The Court know.

THE COURT: I'm very sorry about that. It's -- I am at a loss for words except I know that lawyers, including some very excellent judges, have done first-rate work not withstanding their loss of vision. I don't know how people do it, but I hope you're able to do that as well.

MR. ALTMAN: Well, Your Honor, fortunately I have a fabulous team behind me, but since I've lost my vision I had two cases at the U.S. Supreme Court last year. I didn't argue them, but I sat at counsel table and I just tried a civil RICO case in White Plains in the Southern District of New York by myself, so I seem to manage well enough but all I'm saying it may just take us a little bit more time than you might have thought and I don't expect that to be a problem.

THE COURT: Okay. Thank you.

Mr. Gerarde?

MR. GERARDE: Just a couple of things, I think that the recommended ruling that went to Your Honor, we

don't need to re-litigate any of that. I think if Your Honor finds that the magistrate's decision -- [inaudible/coughing] -- that's sound and I think that will take care of itself.

The one thing I would ask Your Honor is that we will work something out. I think it should be plaintiff makes a submission and defendant opposes or each side makes a submission and has a right to oppose so we have a full record of what everyone thinks on any of the issues raised.

I think issue three is the one where you might get some substantive argument and I was hoping we could have Your Honor say no more than 10 pages because, you know, it's one issue and, otherwise, we'll get 50-page briefs with attachments and I really don't want to go there again.

THE COURT: Anything else?

MR. GERARDE: No, that's it, Judge.

THE COURT: Okay. Then, I will leave it to you to discuss how best to proceed.

I think you're right, Mr. Gerarde, that written submissions make the most sense and I will leave it to counsel to talk about what the page limitation should be rather than try to impose one now but I appreciate your concern.

Then let's leave it like this, you'll confer and contact chambers to let us know the schedule you have in mind for these supplemental submissions. I'm quite sure that we'll adopt your suggested schedule and after I've seen those supplemental submissions I may want to get back on the phone with you, I think I probably will, but let's leave it there for now and thank you for being available today.

MR. GERARDE: Is it possible we could stay on as the lawyers only, Judge, to talk out the dates?

THE COURT: It's fine with me. I can sign off. I'll sign off now.

ALL COUNSEL: Thank you, Your Honor.

(Telephone Conference concluded at 10:32 a.m.)

(* * * * *)

C E R T I F I C A T E

I, Alicia A. Cayode Kyles, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/s/______________________________________

ALICIA A. CAYODE KYLES, RMR
Official Court Reporter
United States District Court
450 Main Street, Room 320
Hartford, Connecticut 06103
(860) 509-8743

Dated: 12/12/2024